**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
JONESBORO   DIVISION

|   |   |   |
|---|---|---|
| | * | |
| WILLIE WELLS, III | * | |
| ADC #100985 | * | |
| Plaintiff | * | |
| | * | |
| VS. | * | NO: 3:07CV00025   SWW |
| | * | |
| ROGER BRIGMAN, ET AL | * | |
| | * | |
| Defendants | * | |
| | * | |
| | * | |

**ORDER**

Plaintiff Willie Wells ("Wells"), an inmate at the Wrightsville Unit of the Arkansas

Department of Correction ("ADC"), brings this action *pro se* under 42 U.S.C. § 1983 against law

enforcement officers Rodger Brigman ("Brigman") and Clay Rose ("Rose") and the City of West

Memphis.  Before the Court is Defendants' motion for summary judgment (docket entries #30,

#31, #32) and Wells' responses in opposition (docket entries #33, #34, #35, #40).  After careful

consideration, and for reasons that follow, Defendants' motion for summary judgment will be

granted in part and denied in part.

Also before the Court is Defendants' motion to strike (docket entry #41) and Wells'

response in opposition (docket entry #42) and Wells' motion for service of a subpoena (docket

entry #36).  After careful consideration, and for the reasons stated in this order, these motions

will be denied.

**I.  Defendants' Motion for Summary Judgment**

1

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).          "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

## A. Background

Unless stated otherwise, the following facts are undisputed.[1]  In July 2005, Wells pled guilty in state court to possession of a controlled substance with intent to deliver, and he received

---

[1]Local Rule 56.1 provides that a party moving for summary judgment must submit a statement of the material facts as to which it contends there is no genuine issue to be tried, and the non-moving party must file a responsive statement of the material facts as to which it contends a genuine issue exists to be tried.  "All material facts set forth in the statement filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Local Rule 56.1(c).

a suspended, six-year sentence.  *See Wells v. State*, 2007 WL 757563, at *1 (Ark. App. March 14, 2007).  On November 3, 2005, Wells was a passenger in a vehicle stopped by Defendant Brigman for having a broken tail lamp.  The driver of the car, William Lawson, was unable to produce a driver's license.  Brigman conducted a computer search, which revealed that Lawson's driver's license had been suspended.  The search revealed no information about Wells' criminal history or his suspended sentence.

Defendant Rose arrived at the scene to provide back-up assistance to Brigman.  Rose searched Wells and found a rock of crack cocaine in a pocket of his jacket.  Wells was arrested, and Brigman transported him to the Crittenden County Detention Center.   Wells claims that Brigman struck him during the booking process and knocked out one of his teeth.  Brigman denies this charge and asserts that Wells made an aggressive move toward him and scratched his face, which resulted in Brigman charging Wells with third degree battery of a police officer.  *See* docket entry #6, Attach.

In December 2005, the State filed a petition to revoke Wells' suspended sentence on grounds that he violated the conditions thereof by (1) wilful failure to pay court-ordered fines and costs; (2) possessing crack cocaine, and (3) committing third degree battery on a police officer.  *See Wells v. State*, 2007 WL 757563, at *1 (Ark. App. March 14, 2007).   At a revocation hearing, Crittenden County Circuit Court Judge David Burnett  found that Wells violated his suspension in all three manners alleged by the State.  *Id.*   Judge Burnett revoked Wells' suspended sentence and sentenced him to 10 years imprisonment on his July 2005 felony conviction.  *Id.*, *see also* docket entry #29, attached transcript at 51.

At the revocation hearing, Wells' attorney moved for dismissal of the possession

allegation, arguing that the crack cocaine possessed by Wells was discovered during an illegal search.  *See* docket entry #29, Ex. C (Revocation Hr'g Tr.) at 46.  Judge Burnett denied the motion.  *Id.*  Wells' attorney also moved for dismissal of the allegation that Wells committed third degree battery on a police officer.  Judge Burnett denied the motion, finding that Wells scratched Brigman's face.  *See id.* at 47.

Wells appealed, arguing that the evidence before Judge Burnett was insufficient to support revocation because the crack cocaine he possessed, and for which his suspension was revoked, was discovered by virtue of an illegal search.  *See Wells v. State*, 2007 WL 757563, at *1 (Ark. App. March 14, 2007).  The Arkansas Court of Appeals affirmed, stating: "Where the trial court expressly bases its decision on multiple independent grounds and appellant challenges only one on appeal, we will affirm without addressing any."  *See Wells v. State*, 2007 WL 757563, at *1 (Ark. App. March 14, 2007).

Wells was not convicted of separate criminal charges that were filed against him related to the events of November 3, 2005.   The charge of third degree battery against a police officer was nolle prossed, and a charge of possession of an illegal substance was dismissed as time-barred.  *See* docket entry #29. Exs. D, E.

On March 5, 2007, Wells filed this lawsuit against Brigman, Rose, Judge Burnett, Crittenden County Deputy Prosecuting Attorney Lindsey J. Fairley, the State of Arkansas, the West Memphis Police Department, and the City of West Memphis.  By order entered April 6, 2007, the Court dismissed Wells' claims against Burnett, Lindsey, the State, and the West Memphis Police Department.   Remaining are Wells' claims against Brigman and Rose, sued in their individual and official capacities.  Wells sues Brigman for unreasonable seizure and

4

excessive force, and he sues Rose for unreasonable search.  Defendants move for summary judgment on these remaining claims.

## B.  Analysis

In support of their motion for summary judgment, Defendants assert the following arguments: (1) Wells' unreasonable search and seizure claims are barred under *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364 (1994)**;** (2) Wells is collaterally estopped from asserting an excessive force claim; (3) Brigman and Rose are entitled to qualified immunity; and (4) no genuine issues for trial exist as to Wells' claims against the City of West Memphis.

### *Heck v. Humphrey*

Defendants assert that Wells' unlawful search and seizure claims must be dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364 (1994).[2]  In *Heck*, the Supreme Court held that if a judgment in favor of a prisoner in a § 1983 action would necessarily imply the invalidity of the conviction, continued imprisonment, or sentence, then no claim for damages lies unless the conviction or sentence is reversed, expunged, or called into question by issuance of a federal writ of habeas corpus.

In this case, a favorable judgment on Wells' unreasonable search claim would not necessarily call into question the validity of his suspended sentence revocation and commitment to the ADC.  First, possession of crack cocaine was only one of three grounds  supporting the revocation of Wells' suspended sentence.  Second, doctrines like independent source, inevitable

---

[2]Defendants also cite *Malady v. Crunk*, 902 F.2d 10 (8th Cir. 1990) in support of their argument that Wells' unlawful seizure claim is barred.  In *Malady*, the Eighth Circuit held that a conviction pursuant to a guilty plea forecloses a § 1983 claim of arrest without probable cause. Here, however, Wells did not plead guilty to the violations for which his suspended sentence was revoked and he was not convicted of committing crimes associated with those violations.

discovery, and harmless error preclude a finding that success on Wells' unreasonable  search claim would necessarily invalidate his sentence.  *See Moore v. Sims*, 200 F.3d 1170, 1171 (8th Cir. 2000)(citing *Heck*, 512 U.S. at 487 n.7, 114 S. Ct. at 2372 n.7)).

Similarly, a finding that Brigman subjected Wells to an unreasonable seizure would not call into question the validity of his sentence.  In *Heck*, the Court provided the following example of circumstances that prevent a plaintiff from recovering damages under § 1983 for unreasonable seizure:

> A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest.  He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures.  In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted.  Regardless of the state law concerning res judicata, the § 1983 action will not lie.

*Heck v. Humphrey*, 512 U.S. 477, 487, n.6, 114 S. Ct. 2365, 2373  n.6 (1994).   Unlike the foregoing example, the violations underlying the revocation of Wells' suspended sentence have no connection to his claim for unreasonable seizure.

## Collateral Estoppel

Collateral estoppel, or issue preclusion, may apply when a § 1983 plaintiff attempts to re-litigate in federal court issues decided against him in state criminal proceedings.  *See Crumley v. City of Saint Paul*, 324 F.3d 1003, 1006 (8th Cir. 2003)(citing *Allen v. McCurry*, 449 U.S. 90, 103, 101 S. Ct. 411 (1980)).  Defendants assert the defense of collateral estoppel in the answer, and although they do not explicitly refer to the defense in their brief in support of summary judgment, they assert that Judge Burnett's finding that Wells committed third degree battery against Brigman precludes Wells' claim that Brigman used excessive force against him.

Wells' excessive force claim is properly analyzed using the Fourth Amendment's reasonableness standard.  *See Wilson v. Spain*, 209 F.3d 713, 715-16 (8th Cir. 2000).   "The test is whether 'the amount of force used was objectively reasonable under the particular circumstances.'"  *Littrell v. Franklin*, 388 F.3d 578, 583 (8th Cir.2004) (quoting *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir.1994)).  "'Circumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct.'" *Henderson v. Munn*,  439 F.3d 497, 502 (8th Cir. 2006)(quoting *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1081 (8th Cir.1990)(citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865(1989)).

Under Arkansas law, a person commits the misdemeanor of battery in the third degree if, with the purpose of causing injury to another person, he causes physical injury to another person or if he recklessly causes physical injury to another person.  *See* Ark. Code Ann. § 5-13-203. Judge Burnett credited Brigman's testimony and found that Wells scratched Brigman's face, thereby committing third degree battery.  *See* docket entry #29, Ex. C at 46.   However, Judge Burnett made no findings regarding Brigman's alleged use of force against Wells or whether it was reasonable.  Although Judge Burnett's finding may preclude re-litigation of whether Wells scratched Brigman's face,[3] it does not settle Wells' excessive force claim.

---

[3]Federal courts give a state court judgment the same preclusive effect it would receive under the law of the state in which it was rendered.  *See Crumley*, 324 F.3d at 1006.  Arkansas law provides that the following elements must be present in order to establish collateral estoppel: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the issue must have been determined by a final and valid judgment; and (4) the issue must have been essential to the judgment." *Beaver v. John Q. Hammons Hotels, L.P.,*  355 Ark. 359, 363, 138 S.W.3d 664, 666 (2003)(citing *Looney v.*

## **Qualified Immunity**

Next, Defendants assert that they are entitled to qualified immunity.  Qualified immunity shields government employees acting within the scope of their duties from suit so long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would know."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).   Two questions guide the determination of whether a defendant is entitled to qualified immunity.  The first is whether the facts, viewed in a light most favorable to the plaintiff, show that the defendant violated the plaintiff's federal constitutional or statutory rights. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001). If a federal right has not been violated, a defendant is entitled to qualified immunity, and the claims against him cannot proceed.  *See id.*  If, however, a constitutional right may have been violated, the Court must inquire whether the right was clearly established. *Id.*

Unreasonable Seizure

Wells does not question the constitutionality of the initial traffic stop by Brigman.  A traffic violation, however minor, creates probable cause to stop the driver of the vehicle.  *See Lawyer v. City of Council Bluffs,* 361 F.3d 1099, 1106 (8th Cir. 2004).  Applicable here, Arkansas law provides: "Any tail lamp or tail lamps, together with any separate lamp for illuminating the rear registration plate, shall be so wired as to be lighted whenever the headlamps or auxiliary driving lamps are lighted."  Ark. Code Ann. S 27-36-215(c)(2).

Wells claims that after the initial traffic stop, Brigman detained him without legal cause.

---

*Looney*, 336 Ark. 542, 986 S.W.2d 858 (1999) and *Fisher v. Jones*, 311 Ark. 450, 844 S.W.2d 954 (1993)).

An officer executing a legal traffic stop may exercise reasonable oversight over the vehicle and its passengers.  For example, the officer may order passengers out of the vehicle, *see Maryland v. Wilson*, 519 U.S. 408, 117 S. Ct. 882 (1997), and pat down the passengers if he has reasonable suspicion that they may be armed and dangerous. *See Michigan v. Long*, 463 U.S. 1032, 1049-50, 103 S. Ct. 3469, 3481 (1983).  Further, an officer may question a vehicle's passengers to verify information provided by the driver.  *See U.S. v. Ward*, 484 F.3d. 1059, 1061 (8th Cir. 2007)(citations omitted).

Here, Brigman was well within the bounds of the Fourth Amendment by asking Lawson for his license.  Additionally, once Lawson was unable to produce a license, Brigman was justified in detaining him long enough to determine whether he was in fact a licensed driver.   In his verified complaint, Wells states that Brigman ran a computer check on Lawson and his passengers, which revealed that Lawson  had a suspended license and no insurance coverage. *See* docket entry #2, at 6.  However, Wells claims that the computer check revealed no information about him.  *See id.*  He further claims that he asked Brigman if he could leave, and Brigman answered, "No."  *See id.*   According to Wells, Brigman detained him twenty minutes or longer, until Rose arrived on the scene.

According to Wells' allegations, Brigman detained him even though a computer check uncovered no information that would create a reasonable suspicion that Wells had committed a crime.  However, it is undisputed that the computer check revealed that Lawson had a suspended driver's license, and  Brigman was still executing a legal traffic stop when he allegedly denied

Wells' request to leave the scene.[4]

The Supreme Court has never addressed whether police may detain passengers for the entire duration of a legal traffic stop.  In fact, the Court explicitly left that question unanswered when it held in *Maryland v. Wilson*, 519 U.S. 408, 117 S. Ct. 882 (1997), that an officer may order a passenger out of a vehicle during a traffic stop without transgressing the Fourth Amendment.  *See Maryland v. Wilson*, 519 U.S. at  415 n.3, 117 S. Ct. at  886 n.3.  The Court finds that the facts do not support a violation of clearly established law with respect to Wells' unreasonable seizure claim, and that Brigman is entitled to qualified immunity as to this claim. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987)("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

Unreasonable Search.

In Wells' original complaint, he alleges that immediately after Rose arrived on the scene, Rose ordered him to exist the vehicle, and he began searching him.  *See* docket entry #2, at 6.  In his amended complaint, Wells alleges that Rose lacked probable cause or consent to search him. Docket entry #3, at 3.  In support of his claim to qualified immunity, Rose asserts that Wells cannot establish a constitutional violation in connection with his search of Wells' person because (1) he obtained Wells' consent for the search; (2) he performed a pat down search for officer safety; and (3) Wells agreed to be searched at any time as a condition of his suspended sentence.

*Consent*.  In his verified amended complaint, Wells states that he did not give his consent

---

[4]In Wells' brief in opposition to summary judgment he states that even after Rose arrived on the scene, "Brigman was doing his job with the driver."  Docket entry #34, at 2.

to be searched.  Because a dispute exists as to whether Wells consented to be searched, summary judgment on the basis of qualified immunity is not proper.  *See Gainor v. Rogers*, 973 F.2d 1379, 1385 (8th Cir. 1992)("Once a genuine issue of fact is found to exist, the defense of qualified immunity shielding the Defendant from trial must be denied.").

Although summary judgment on the basis of consent is not possible,  it appears from Wells' brief that he proceeds under the false assumption that Rose has the burden to show voluntarily consent.[5]  In a criminal case, the government bears the burden to prove that consent to search was freely and voluntarily given.  However, in a § 1983 civil action, once the defendant has produced evidence of consent, the plaintiff is required to show, by a preponderance of the evidence, that he never consented or that the consent was invalid because it was given under duress or coercion.  *See Heck v. Humphrey,* 512 U.S. 477, 487, 114 S.Ct. 2364, 2373 (1994)(stating that in order to recover compensatory damages for unreasonable search under § 1983, a  plaintiff must prove that the search was unlawful); *see also Valance v. Wisel,* 110 F.3d 1269, 1279 (7th Cir. 1997)(holding that plaintiff in a § 1983 action bears that ultimate burden of persuasion on the issue of whether consent was voluntary).

*Pat-Down Search*.  An officer may perform a pat-down search if he has a reasonable suspicion that the person being searched is armed and dangerous.  *See United States v. Roggeman*, 279 F.3d 573, 577 (8th Cir. 2002).  Here, Defendants offer no evidence that Rose had

_____

[5]In his brief in opposition to summary judgment, Wells states: "The State has a heavy burden to prove by clear and positive testimony that a consent to search was freely and voluntarily given."  Docket entry #34, at 4.

a reasonable, articulable suspicion that Wells was armed and dangerous.[6]   Accordingly, the

Court cannot find that a reasonable officer in Rose's position would have believed that his

conduct was lawful in light of clearly established law.

*Suspended Sentence Agreement*.   Rose asserts that he did not violate Wells' Fourth

Amendment rights because Wells had agreed as a term of his suspended sentence to be searched

at any time.   However, Rose offers no evidence that at the time of the search, he was aware of

that Wells had agreed to be searched.   In fact, the record indicates that at the time of the search

neither Rose nor Brigman was aware of Wells' conviction and suspended sentence.   The Court

is unable to find that a reasonable officer in Rose's position would have believed that a search

was warranted pursuant to the terms of Wells' suspended sentence.

<u>Excessive Force</u>

At Wells' revocation hearing, Brigman testified that after he transported Wells to the

detention center and began the booking process, Wells became verbally abusive and kept getting

"louder and closer."   Docket entry #29, Ex. C at 16.   Brigman testified: "So I stopped my

booking sheet, turned around and faced him.   By then, he was right in my face.   I tried to put my

left hand up to move him out of my space, and he reacted violently." *Id.*   Brigman testified that

Wells made an aggressive move toward him and tried to strike him.   Additionally, Judge Burnett

received into evidence photographs of Brigman with a scratch across his right cheek and neck.

*Id*. at 44-45.

Wells alleges that during the booking process, he complained to Brigman that his

---

[6]In fact, Rose testified at Wells' state court revocation hearing that it is his practice to
"pat down every subject."   Docket entry #29, Ex. C at 39.

constitutional rights had been violated.  Wells alleges that he defied Brigman's orders to "shut up" and informed Brigman that he had a First Amendment right to speak.  Wells states that he "kept stating the laws" to Brigman, and Brigman became verbally abusive and struck him in the mouth, knocking out his gold tooth.  Even assuming that Wells is collaterally estopped from denying that he scratched Brigman's face, genuine issues of fact exist as to whether Brigman used excessive force against Wells.  Accordingly, Brigman is not entitled to qualified immunity on this claim.

### **Municipal Liability**

It is well settled that a plaintiff may establish municipal liability under § 1983 by proving that her constitutional rights were violated by an "action pursuant to official municipal policy" or misconduct so pervasive among non-policymaking employees of the municipality "as to constitute a 'custom or usage' with the force of law."  *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998)(quoting  *Monell v. Dep't of Social Servs. of the City of New York,* 436 U.S. 658, 691 (1978)).

"Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who [is determined by state law to have] the final authority to establish governmental policy." *Id. (*quoting *Jane Doe A. v. Special Sch. Dist,*  901 F.2d at 642, 645 (8th Cir. 1990)).   Alternatively, "custom or usage" is demonstrated by: (1) the existence of continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) the plaintiff's injury by acts pursuant to the governmental entity's custom,

*i.e.,* proof that the custom was the moving force behind the constitutional violation.  *Id.* (quoting *Jane Doe A.*, 901 F.2d at 646).

Defendants assert that Wells has failed to allege facts or provide any evidence sufficient to support a claim for municipal liability under § 1983.  The Court agrees.  In support of his claims against the City, Wells merely states that "the City is responsible for the way officers perform their duties."  Docket entry #34, at 5.  Wells' claims against the City of West Memphis will be dismissed with prejudice.

## II.  Defendants' Motion to Strike

Defendants assert that Wells' response in opposition to summary judgment is actually a cross-motion for summary judgment**,** which should be stricken as untimely.   The Court disagrees that Wells' response can be construed as a cross-motion for summary judgment.  Accordingly, Defendants' motion to strike will be denied.

## III.  Wells' Motion for a Subpoena

Wells requests that the Court issue a subpoena duces tecum ordering Crittenden County Sheriff Dick Busby, a non-party, to produce video footage of the booking area of the Crittenden County Detention Center from 11:30 p.m. on November 2, 2005 through 1:30 a.m. on November 3, 2005.   Wells, who proceeds *in forma pauperis*, requests that the Court order service of the subpoena at the government's expense.

The decision of whether to grant or deny subpoenas for indigent parties at the expense of the government is within the discretion of the trial court.  *See Williams v. Carter*, 10 F.3d 563. 566 (8th Cir. 1993). Wells requested the same video footage at issue in his present motion in a request for production he mailed to Defendants on December 6, 2007, *see* docket entry #28, and

the Court has no information regarding  Defendants' response to Wells' discovery request.
Because it is not clear that a subpoena is necessary, Wells' motion will be denied without
prejudice.  The Court will order Defendants to file a document, within ten days from the entry of
this order, stating their response to Wells' request for production of video footage.

## IV.

For the reasons stated in this order, Defendants' motion for summary judgment (docket
entry #30) is GRANTED IN PART AND DENIED IN PART.  Defendants' motion is granted to
the extent that (1) Plaintiff's unreasonable seizure claim against Defendant Brigman is
DISMISSED WITH PREJUDICE on the ground of qualified immunity and (2) Plaintiff's claims
against the City of West Memphis are DISMISSED WITH PREJUDICE for lack of genuine
issues for trial.  Only the following claims remain for trial: (1) Plaintiff's Fourth Amendment,
unreasonable search claim against Defendant Rose in his individual capacity and (2) Plaintiff's
Fourth Amendment, excessive force claim against Defendant Brigman in his individual capacity.

IT IS FURTHER ORDERED that Defendants' motion to strike (docket entry #41) is
DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion for issuance and service of a
subpoena (docket entry #36) is DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendants are directed to file a document stating their
response to Plaintiff's request for production of video footage (Plaintiff's Request for Production
No.3) within ten (10) days from the entry date of this order.

IT IS SO ORDERED THIS 25TH DAY OF FEBRUARY, 2008.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE