IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

|  |  |  |
|---|---|---|
| WILLIE WELLS, III <br> ADC #100985 <br>           Plaintiff <br><br> VS. <br><br> ROGER BRIGMAN, ET AL <br><br>           Defendants | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | NO: 3:07CV00025 SWW |

**ORDER**

Plaintiff Willie Wells ("Wells") brings this action *pro se* under 42 U.S.C. § 1983 against law enforcement officers Rodger Brigman ("Brigman") and Clay Rose ("Rose"). Before the Court is Defendants' second motion for summary judgment (docket entries #75, #76, #77) and Wells' response in opposition (docket entry #81). After careful consideration, and for reasons that follow, Defendants' second motion for summary judgment will be granted, and Wells' remaining claims brought under 42 U.S.C. § 1983 will be dismissed with prejudice.

**I. Background**

In July 2005, Wells pled guilty in state court to possession of a controlled substance with intent to deliver, and he received a suspended, six-year sentence. *See Wells v. State*, 2007 WL 757563, at *1 (Ark. App. March 14, 2007). On November 3, 2005, Wells was a passenger in a vehicle stopped by Defendant Brigman for having a broken tail lamp. The driver of the car, William Lawson, was unable to produce a driver's license. Brigman conducted a computer search, which revealed that Lawson's driver's license had been suspended. The computer search

1

revealed no information about Wells' criminal history.

Defendant Rose arrived at the scene to provide back-up assistance to Brigman. Rose searched Wells and found a rock of crack cocaine in a pocket of his jacket. Wells was arrested, and Brigman transported him to the Crittenden County Detention Center ("CCDC"). During the booking process, an altercation ensued between Brigman and Wells.

The State filed a petition to revoke Wells' suspended sentence on grounds that he violated the conditions thereof by (1) wilful failure to pay court-ordered fines and costs; (2) possessing crack cocaine, and (3) committing third degree battery on a police officer (Defendant Brigman). *See Wells v. State*, 2007 WL 757563, at *1 (Ark. App. March 14, 2007). At a revocation hearing, Crittenden County Circuit Court Judge David Burnett found that Wells violated his suspension in all three manners alleged by the State. *Id*. Judge Burnett revoked Wells' suspended sentence and sentenced him to 10 years imprisonment on his July 2005 felony conviction. *Id*., *see also* docket entry #29, attached transcript at 51.

On March 5, 2007, Wells filed this lawsuit against Brigman, Rose, Judge Burnett, Crittenden County Deputy Prosecuting Attorney Lindsey J. Fairley, the State of Arkansas, the West Memphis Police Department, and the City of West Memphis. By order entered April 6, 2007, the Court dismissed Wells' claims against Burnett, Lindsey, the State, and the West Memphis Police Department, and by order entered February 25, 2008, the Court dismissed Wells' unreasonable seizure claim against Defendant Brigman. Remaining are Wells' individual capacity claim against Defendant Rose for unreasonable search and Wells' individual capacity claim against Defendant Brigman for excessive force.

On February 19, 2009, Defendants filed a second motion for summary judgment,

asserting, among other things, that they are entitled to qualified immunity. Although Defendants filed their motion after the motions deadline expired, the Court determined that Defendants are entitled to assert the defense of qualified immunity at this stage of the litigation. Accordingly, by order entered March 3, 2009, the Court notified Wells that it would consider Defendants' second motion for summary judgment and that he would have an extended period in which to file a response.

Wells has filed a response to Defendants' motion. He submits no additional evidence going to the merits of his claims; he only objects that Defendants filed their motion after the motions deadline expired.

## II. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a

dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

### III. Analysis

Qualified immunity shields government employees acting within the scope of their duties from suit so long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would know." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Two questions guide the determination of whether a defendant is entitled to qualified immunity. The first is whether the facts, viewed in a light most favorable to the plaintiff, show that the defendant violated the plaintiff's federal constitutional or statutory rights. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a federal right has not been violated, a defendant is entitled to qualified immunity, and the claims against him cannot proceed. *See id*. If, however, a constitutional right may have been violated, the Court must inquire whether the right was clearly established. *Id.*

**Unreasonable Search**

Wells alleges that immediately after Defendant Rose arrived on the scene of the traffic stop, he ordered him to exist the vehicle, and he began searching him without probable cause or consent to search. In support of his claim to qualified immunity, Rose asserts that the search did not violate the Fourth Amendment because Wells consented to be searched at any time as a condition of his suspended sentence.[1]

---

[1]Rose made a similar argument in support of his first motion for summary judgment, but he did not assert that he was aware, at the time of the search, that Wells was subject to be searched as a condition of his suspended sentence. Finding no authority for the proposition that a

The Supreme Court has recognized that probationers subject to be searched as a condition of their probation have a reduced expectation of privacy.  In *United States v. Knights*, 534 U.S. 112, 122 S. Ct. 587 (2001), the Court held that a search of a probationer's residence was reasonable under the Fourth Amendment where the officer conducting the search had a reasonable suspicion that the probationer was engaging in criminal activity and also knew that the probationer was subject to a court order requiring him to submit to search at any time.  *Knights*, 534 U.S. at 121, 122 S. Ct. 593("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.")

By affidavit, Rose testifies that when he approached Wells after the traffic stop, he knew that Wells had been convicted for robbery and drug crimes and that he was subject to the terms of probation or a suspended sentence that required him to submit to a search at any time. Additionally, Rose testifies that before the search, he observed that Wells was acting nervous, talking loudly, and using incomplete sentences.  Rose states that based on his experience as an officer, he believed that Wells was under the influence of narcotics, which Rose knew violated the conditions of Wells' suspended sentence.  Rose further states that  he suspected that Wells was armed and dangerous, based on Wells' criminal history and "recent suspicions" that Wells

---

search is reasonable solely because the person searched was a probationer, regardless of whether the officer conducting the search knew that the person was subject to be searched as a condition of probation, the Court declined to dismiss the unreasonable search claim.  Rose also asserts, as he did in the initial motion for summary judgment, that Wells consented to be searched at the time of the search.  However, as explained in the order addressing Defendants' first motion for summary judgment, Wells disputes that he gave Rose consent to search him.

and his girlfriend had recently robbed a person in the in the same area where Lawson's car was stopped.[2]

Based on Rose's undisputed testimony, the Court finds that when Rose searched Wells' person, he knew that Wells was a subject to a search condition, and he had reasonable suspicion that Wells had violated the terms of his suspended sentence and was engaged in criminal activity. Any intrusion on Wells' privacy rights, which were significantly diminished by reason of his probationary status, was reasonable and did not violate the Fourth Amendment.   Because the Court finds that Rose did not violate Wells' Fourth Amendment rights by searching his person, he is entitled to qualified immunity and Wells' § 1983 claim against Rose cannot proceed.

**Excessive Force**

In his verified amended complaint, Wells alleges that Brigman physically assaulted him during the booking process at the CCDC.  Wells acknowledges that he defied Brigman's orders to be quiet.  He alleges that when he "kept stating the laws," Brigman struck him in the mouth, knocking out a gold tooth.  Wells claims that he suffered headaches and a swollen mouth as a result of the blow.

> In a grievance to the chief jailer dated November 8, 2005, Wells complained:
>
> I am writing to file the following grievance . . . about paying for what [an] officer did to me.  I'm not responsible for the officer hitting me in the jaw. I [have] been complaining to every officer about my jaw . . . pain.  I fil[ed] out a nurse form. I'm being denied medical attention.  Nurse Sabrina said on 11-05-05 that I would get an x-ray on 11-07-05 on my jaw.

Docket entry #77, Ex. #9.  The bottom of the grievance form contains a note dated 11-08-05 that

---

[2] A police report submitted by Defendants states that a hotel room used by unidentified robbers and auto thieves was registered to "Willie Wells the 3rd."  Docket entry #77, Ex. 10.

reads: "We have seen inmate.  His jaw is not swollen.  L. Peter, R.N." *Id*.

Brigman contends that any force he used against Wells was purely defensive and did not cause actual injury.  Brigman cites his previous testimony received during Wells' revocation hearing in state court, in which he recounted that during the booking process, Wells became verbally abusive and kept getting "louder and closer."  Docket entry #29, Ex. C at 16.  Brigman testified:  "So I stopped my booking sheet, turned around and faced him.  By then, he was right in my face.  I tried to put my left hand up to move him out of my space, and he reacted violently." *Id*.  During the revocation hearing, the court received photographs of Brigman with a scratch across his right cheek and neck, which he claims he received during his altercation with Wells. *Id*. at 44-45.  Wells does not dispute that he struck Brigman, but he claims that he did so only after Brigman hit him.[3]

By affidavit officer Daryl Turner testifies that he witnessed Brigman bring Wells into the detention center for booking.  Docket entry #77, Ex. #8.  Turner testifies that Brigman uncuffed Wells, directed him to sit on a bench, and began filling out a booking report.  According to Turner, Wells began to curse and called Brigman a "mother fucker" and a "mother-fucking bitch."  Turner recounts that Wells got up from his seat and continued to "verbally abuse" Brigman.  According to Turner, Wells refused Brigman's instructions to "hush up" and moved close to Brigman, well within arm's reach.  Turner states that  Brigman ordered Wells to be quiet and sit down, but Wells refused and "continued verbally abusing . . . Brigman right in his face."

---

[3]In a document filed in state court, Wells asserted: Defendant Wells swears under penalty of perjury that officer Brigman hit him in his mouth, knocking out his gold tooth . . first before defendant hit back." Docket entry #29, Ex. A.

*Id.*, ¶ 12.   Turner states that Wells continued approaching Brigman in an aggressive manner, and Brigman raised his left hand up in what appeared to an attempt to stop or move Wells away from his face.  Turner states that before Brigman could touch Wells, Wells swung at Brigman, and "Brigman defended himself." *Id.*, ¶ 16.  Turner states that he and other detention center employees pulled Wells off of Brigman, and both Wells and Brigman fell to the ground.  He states that after he and other employees were able to pull Wells away from Brigman, Wells continued to be uncontrollable, and it took four employees to put him in a cell.  Turner states that he did not see a gold tooth before or after the altercation, and Wells never complained of losing a tooth.

Excessive force claims brought by pretrial detainees are analyzed under an objective reasonableness standard.  *See Andrews v. Neer*, 253 F.3d 1052, 1062 (8th Cir. 2001).[4]  Under that standard, an officer is liable when he employs force that is not objectively reasonable in light of the facts and circumstances confronting him.  *See Goff v. Bise*, 173 F.3d 1068, 1073 (8th Cir.1999) (citations omitted).   The officer's actions "must be judged from the perspective of a reasonable officer on the scene, rather with 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865 (1989).

Here, Wells acknowledges that he refused Brigman's orders to be quiet, and he does not dispute that he refused Brigman's order to sit down or that he approached Brigman in an

---

[4] Wells was a pretrial detainee at the time of the alleged use of excessive force, thus his claim comes under the Fourteenth Amendment's Due Process Clause. *See Graham v. Conner*, 490 U.S. 386, 395 n.10 (1989)(noting that the Due Process Clause protects a pretrial detainee from force amounting to punishment).  However, courts generally analyze excessive force claims by pretrial detainees similar to those brought by arrestees, using an objective reasonableness standard.  *See Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001).

aggressive manner.  Furthermore, although Wells complained to the chief jailer that he suffered jaw pain after the altercation with Brigman, he did not complain that he lost a tooth.

The Court finds that under the undisputed circumstances, it was not unreasonable for Brigman to employ physical force as a means to subdue Wells and restore order.  Furthermore, the Court finds that even if Brigman hit Wells in the jaw or face prior to being struck by Wells, a single blow to Wells was objectively reasonable and not excessive under the circumstances.  *See Winters v. Adams*, 254 F.3d 758, 765 (8th Cir. 2001)(holding that officer did not use excessive force by striking detainee in the eye with a closed fist while trying to remove detainee, who was resisting, from vehicle).

Because the Court finds that Brigman did not use excessive force against Wells, Brigman is entitled to qualified immunity and Wells' excessive force claim cannot proceed.

**IV.**

For the reasons stated, Defendants' second motion for summary judgment (docket entry #75) is GRANTED.  There being no claims remaining, pursuant to the judgment entered together with this order this case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 26TH DAY OF MARCH, 2009.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE